# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEPHEN HACKETT,<br><br>    Plaintiff,<br><br> vs.<br><br>RAYMOND FISHER, et al.,<br><br>    Defendants. | 1:15-cv-00670-BAM (PC)<br><br>SCREENING ORDER DISMISSING AMENDED COMPLAINT WITH LEAVE TO AMEND<br>(ECF No. 9)<br><br>**THIRTY-DAY (30) DEADLINE** |

## I. Screening Requirement and Standard

Plaintiff Stephen Hackett ("Plaintiff") is a state prisoner proceeding pro se in this civil rights action pursuant to 42 U.S.C. § 1983.  Plaintiff filed a consent to proceed before a magistrate judge on May 14, 2015. (ECF No. 4.)

On June 7, 2016, The Court dismissed Plaintiff's complaint with leave to amend. (ECF No. 5.) Plaintiff was subsequently granted an extension until July 25, 2016 to amend his complaint. (ECF No. 7.) Plaintiff filed his amended complaint on July 14, 2016. Plaintiff's amended complaint is currently before the Court for screening.

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity and/or against an officer or employee of a governmental entity. 28 U.S.C. § 1915A(a).  Plaintiff's complaint, or any portion thereof, is subject to dismissal if it is frivolous or malicious, if it fails to state a claim upon which relief may be granted, or if it seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1), (2); 28 U.S.C. § 1915(e)(2)(B)(ii).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief. . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955, 1964-65 (2007)). While a plaintiff's allegations are taken as true, courts "are not required to indulge unwarranted inferences." Doe I v. Wal-Mart Stores, Inc., 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted).

Prisoners proceeding pro se in civil rights actions are entitled to have their pleadings liberally construed and to have any doubt resolved in their favor. Hebbe v. Pliler, 627 F.3d 338, 342 (9th Cir. 2010) (citations omitted). To survive screening, Plaintiff's claims must be facially plausible, which requires sufficient factual detail to allow the Court to reasonably infer that each named defendant is liable for the misconduct alleged, Iqbal, 556 U.S. at 678, 129 S.Ct. at 1949 (quotation marks omitted); Moss v. United States Secret Service, 572 F.3d 962, 969 (9th Cir. 2009). The sheer possibility that a defendant acted unlawfully is not sufficient, and mere consistency with liability falls short of satisfying the plausibility standard. Iqbal, 556 U.S. at 678, 129 S.Ct. at 1949 (quotation marks omitted); Moss, 572 F.3d at 969.

## II.    Plaintiff's Allegations

Plaintiff is currently incarcerated at the California Substance Abuse Treatment Facility in Corcoran, California. The events in the amended complaint allegedly occurred at Valley State Prison ("VSP") in Chowchilla, California. Plaintiff names the following defendants: (1) Warden Raythel Fisher; (2) Deputy Director J. Lewis, Policy and Risk Management Services; (3) Inkwinder Singh, M.D.; (4) Chief Physician and Surgeon Dr. K. Toor; (5) Nurse Practitioner L. Stolfus; and (6) Physicians' Assistant Chetana Sisodia.

On June 27, 2014, Plaintiff was transferred to VSP from Wasco State Prison ("Wasco"). While at Wasco, he had been approved for a total left knee revision and to have removal of an ABX antibiotic spacer that was supposed to have been removed on January 27, 2014. The approval, Form 7243, was forwarded to VSP and received by Defendant Stolfus on August 20,

2014.  Dr. Nikolai Wolfson, M.D., signing off on August 21, 2014. When Plaintiff arrived at VSP, his condition began deteriorating rapidly, and he was subsequently prescribed a four-wheel walker and cane due to the inability to ambulate. Plaintiff suffered from continued oozing at the left knee infection site of a contracted methicillin-resistant staphylococcus aura (MRSA) infection obtained while in custody, and a continuing deterioration of the supporting bone-stalk structure of the left knee.

On September 4, 2014, Plaintiff was seen by Defendant L. Stolfus, and he inquired as to why his approved and scheduled surgery had not yet occurred. Defendant Stolfus generated another CDCR Form 7243, in which she marked the section for earliest possible release date, and that there was a life-term of imprisonment. Plaintiff's actual release date is November 29, 2018. Defendant Stolfus also wrote in pertinent part, "49 year old male with history of multiple surgeries L[eft] knee . . . MRSA methicillin-resistant staphylococcus aura Tx, Pt. seen by ortho → needs ortho … removal of antibiotics." (ECF No. 9, p. 10.)  The request for services was denied on September 10, 2014.

On information and belief, it was incumbent on Stolfus to ensure that the inmate information was accurate, and she violated the policies and procedures for inmate medical services by failing to designate the appropriate time frame in which the specialty services should be provided. The designation should have been urgent, not routine. The relevant policies require that if an inmate has been received via intra-system transfer and has had a previously-scheduled appointment or consult, the receiving institution shall ensure the inmate receives the specialty appointment or consult no more than thirty (30) days from the date the procedure was originally scheduled. Policy requires emergency consultations or procedures be provided immediately, and high priority procedures or consultations be provided within fourteen (14) days after the primary care physician's order. Routine allows for ninety (90) days for the service to be provided. By designating the time frame as routine, Defendant Stolfus as the primary care provider did not provide sufficient notice to the other medical personnel about when the service was required to be provided to Plaintiff. As a consequence of Defendant Stolfus's creation of the Form 7243, the request for services was denied on September 10, 2014.

On November 12, 2014, Plaintiff once more saw Defendant Stolfus due to complaints of continued left knee pain and inability to walk on the left leg. His infection at the left knee joint was oozing. An antibiotic regime was started and a new brace ordered. Defendant Stolfus also created another Form 7243, at Plaintiff's request. Again, Defendant Stolfus marked routine as the time-frame. Plaintiff's request for services was denied on December 4, 2014.

Plaintiff experienced continued pain and persistent oozing at the left knee joint during December 2014 and January 2015. Plaintiff was then seen by Defendant Singh, M.D. who ordered another antibiotic regimen of treatment. Defendant Singh passed the buck onto Sacramento's utilization management unit headquarters as the reason the Form 7243 request for services were being denied, even though the forms were stamped denied at VSP. Defendant Singh also suggested to Plaintiff during the visit that it would be better for Plaintiff to transfer to another institution in Chino that was aggressive in rendering treatment. Defendant Singh failed to inform Plaintiff of the general time frame to expect the surgery. On information and belief, Defendant Singh violated policy by failing to review the file before assessing the denial of the Form 7243s. Had Defendant Singh reviewed the file, he would have seen the approved surgery was received from Wasco. Defendant Singh either ignored or failed to review the file.

From June 24, 2014 through February 2015, Plaintiff continued to suffer pain, oozing at the left knee, atrophy, and worsening bone-stalk deterioration. Plaintiff never saw a physical therapist, can no longer straighten his left knee, and cannot ambulate without assistive devices since arriving at VSP. Plaintiff was granted long-term opiate treatment for pain relief by the pain management committee, but was given nothing more effective than short-term pain medication and psychotropic medications.

On February 4, 2015, Plaintiff filed a grievance complaining about the denial of the surgical procedure. On February 28, 2015, Plaintiff's appeal was partially granted by Dr. Virk. On March 6, 2015, Plaintiff was seen by a general practitioner, who submitted a request for an offsite consultation, and stated surgery should have been done a year and a half ago. On March 13, 2015, Plaintiff was seen by Defendant Singh, who prescribed oral antibiotics to treat the continued oozing staph infection.

On March 19, 2015, Plaintiff was transported to Madera Community Hospital, and was seen by Cyril Rebel, M.D. The clinical report stated that oral antibiotics were only suppressing the infection, were of no benefit, that Plaintiff should be seen by a surgeon with the ability to do very complex revisions, and should be seen by an infections disease and internal medicine doctor. The report further stated that Plaintiff would need prolonged therapy and revision of the knee, that the risk of infection is quite high, that with recurrent infection, Plaintiff may need an amputation, and he would benefit from treatment sooner rather than later.

On March 20, 2015, Plaintiff was seen by Dr. Wong at VSP, who agreed the surgery should have been done long ago, and he needed to come off antibiotics.

On April 10, 2015, Plaintiff was sent to an offsite consult with another orthopedic specialist. He concurred with the March 19, 2015 assessment and was shocked that Plaintiff was made to bear weight and walk on the spacer for another two years. He recommended a fused knee and an artificial joint, or possibly amputation.

On May 11, 2015, Plaintiff was seen at VSP's infirmary for a consultation with an infectious disease M.D., Richard Smith, who stated that Plaintiff had become immune to antibiotics. Dr. Smith recommended debriding the remaining worn down structure, taking out the cadaver bone, and providing around the clock antibiotic treatment. He referred Plaintiff to Dr. Casey.

On June 22, 2015, Plaintiff received a third level response to his grievance, that it had been denied. Defendant Lewis made statements in the decision that were contradicted by supporting outcome data and applicable policies and procedures. Defendant Lewis stated that the orthopedic specialist did not recommend another knee replacement due to a history of three prior surgeries, but Dr. Casey on August 7, 2015 states "we will proceed with a revision total knee replacement removal of antibiotic spacer." (ECF No 9, p. 18.) Plaintiff's medical file also contained consults that concurred with the medical necessity of the treatment, even though Dr. Lewis wrote there was no documentation. The second level response in February 28, 2015 also wrote that Plaintiff was being referred for an evaluation as a partial grant. Defendant Lewis also wrote that Plaintiff's personal preferences, previous orders, and input from medical consultations

may be considered, but do not control the professional judgment of the current medical providers.

On information and belief, the appeal was assigned to Defendant Lewis after Plaintiff stated he was dissatisfied with the second level response, and Defendant Lewis received that information. Defendant Lewis was to review all Plaintiff's pertinent medical files, and although being provided with the file, he failed to thoroughly review it and consult the applicable procedures. As a result, Plaintiff's pain and suffering continued.

From June 2015 to May 2016, Plaintiff continues to suffer pain and deteriorating bone rubbing against the left knee joint, atrophy, a lessening of the ability to straighten the left leg, oozing infection site, and staph infection. Plaintiff filed another grievance on May 16, 2016, seeking knee surgery and effective pain medication. On May 31, 2016, Defendant Sisodia interviewed Plaintiff in regarding to the grievance. Defendant Sisodia refused to grant the pain management committee-approved long-term opiate medication, saying she did not want Plaintiff to become addicted with two years left to go on his sentence. Instead, she prescribed ibuprofen. Defendant Sisodia either ignored or failed to review Plaintiff's file.

On June 16, 2016, Defendant Toor granted Plaintiff's request for surgery if he paid all costs associated with the procedure. Defendant Lewis's director-level review stated that there was no indication Plaintiff was denied medical services in an attempt to reduce costs, in contradiction. On information and belief, Defendant Toor was to review Plaintiff's medical file, but he failed to inform Plaintiff that the surgery could be obtained at private costs at an earlier date, delaying treatment and causing increased pain and suffering. Defendant Sisodia also failed to inform Plaintiff he could obtain the surgery at private costs as a way to expedite approval. On information and belief, Defendant Sisodia conferred with Defendant Toor as the reviewer of the appeal.

As of the time this complaint was filed, Plaintiff has not received the orthopedic surgery to remove the antibiotic spacer, nor the knee replacement. He received a denial notice of his application to present a late state claim on March 16, 2015.

///

Plaintiff alleges deliberate indifference against Defendants Lewis, Fisher, Singh, Toor, Stolfus and Sisodia.  Plaintiff alleges a custom and practice causing violations of his civil rights due to overcrowding and lack of medical staff, against Defendants Lewis, Fisher, Singh, Toor, and Stolfus, as they were put on notice due to <u>Plata v. Schwarzenegger</u>, et al., C01–1351–TEH (N.D. Cal. Jan. 23, 2008). Plaintiff alleges negligence against all defendants, and medical negligence against Defendants Singh, Toor, Stolfus, and Sisodia. Plaintiff seeks damages, costs, and expenses.

**III.    Deficiencies of Complaint**

    **A.    Eighth Amendment-Deliberate Indifference to Serious Medical Needs**

"[T]o maintain an Eighth Amendment claim based on prison medical treatment, an inmate must show "deliberate indifference to serious medical needs.'" <u>Jett v. Penner</u>, 439 F.3d 1091, 1096 (9th Cir.2006) (quoting <u>Estelle v. Gamble</u>, 429 U.S. 97, 104, 97 S.Ct. 285, 291, 50 L.Ed.2d 251 (1976)). The two part test for deliberate indifference requires the plaintiff to show (1) "a 'serious medical need' by demonstrating that failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain,'" and (2) "the defendant's response to the need was deliberately indifferent." <u>Jett</u>, 439 F.3d at 1096; <u>Wilhelm v. Rotman</u>, 680 F.3d 1113, 1122 (9th Cir. 2012).

Deliberate indifference is shown where the official is aware of a serious medical need and fails to adequately respond. <u>Simmons</u>, 609 F.3d at 1018. "Deliberate indifference is a high legal standard." <u>Simmons</u>, 609 F.3d at 1019; <u>Toguchi v. Chung</u>, 391 F.3d 1051, 1060 (9th Cir. 2004). The prison official must be aware of facts from which he could make an inference that "a substantial risk of serious harm exists" and he must make the inference. <u>Farmer v. Brennan</u>, 511 U.S. 825, 837 (1998).

"Mere 'indifference,' 'negligence,' or 'medical malpractice' will not support this cause of action." <u>Broughton v. Cutter Laboratories</u>, 622 F.2d 458, 460 (9th Cir. 1980), citing <u>Estelle</u>, 429 U.S. at 105–06. "[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the

victim is a prisoner." Estelle, 429 U.S. at 106; see also Anderson v. County of Kern, 45 F.3d 1310, 1316 (9th Cir. 1995). Even gross negligence is insufficient to establish deliberate indifference to serious medical needs. See Wood v. Housewright, 900 F.2d 1332, 1334 (9th Cir. 1990).

### 1.    Warden Fisher

Plaintiff states that he brings an Eighth Amendment deliberate indifference claim against Warden Fisher, but makes no factual allegations about Fisher. To state a claim under section 1983, Plaintiff must demonstrate personal involvement in the underlying violation of his rights, Iqbal, 129 S. Ct. at 1949; Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002). He has alleged no facts linking Warden Fisher to his medical needs or treatment. Plaintiff will be given leave to amend, to the extent he can do so in good faith. The Court is not required to accept as true plaintiff's bare assertions that his constitutional deprivations resulted from official policies, customs and pervasive practices. See Cholla Ready Mix, Inc. v. Civish, 382 F.3d 969, 973 (9th Cir. 2004) (a court is not "required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences").

### 2.    Director Lewis and Chief Physician/Surgeon Toor

Plaintiff alleges Director Lewis made errors in reviewing Plaintiff's grievances, including by ignoring or failing to review pertinent medical records and follow policies and procedures. He further alleges that Chief Physician and Surgeon Toor granted his grievance, but did so in an inefficient and improper manner. His allegations do not sufficiently allege any knowledge of a serious medical need or deliberate indifference to that need.

Furthermore, to the extent Plaintiff attempts to assert liability related to the processing and rejection of his inmate appeals or grievances against Lewis and Toor, he may not do so.  As Plaintiff has been previously informed, he cannot pursue any claims against staff relating to their involvement in the administrative review of his inmate appeals. Prison officials are not required under federal law to process inmate grievances in a specific way or to respond to them in a favorable manner. It is well established that "inmates lack a separate constitutional entitlement to a specific prison grievance procedure." Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir. 2003)

1  (citing <u>Mann v. Adams</u>, 855 F.2d 639, 640 (9th Cir.1988)). This deficiency cannot be cured by

2  amendment.

3          **3.**      **Nurse Practitioner Stolfus**

4          Plaintiff alleges Nurse Practitioner Stolfus saw Plaintiff and made errors in filing out

5  Form 7243s for his treatment recommendations. She recommended him for ortho treatment and

6  removal of antibiotics, but marked the forms incorrectly as to Plaintiff's inmate status. She also

7  marked the treatment as routine rather than urgent or higher priority.  She ordered him antibiotics

8  and a new brace.

9          Plaintiff fails to state a cognizable claim for deliberate indifference to serious medical

10  needs against Defendant Stolfus. Plaintiff alleges that Stolfus wrote that Plaintiff needed ortho

11  treatment and removal of antibiotics. However, she acted on that need, and filled-out Form 7243s

12  for him. Although she made errors, his allegations only allow an inference that she did so

13  negligently. As stated above, mere negligence will not support this cause of action. Further,

14  Plaintiff states his treatment was denied due to Stofus's errors, but also says her error was in

15  indicating he needed treatment within ninety (90) days, rather than a shorter period. This appears

16  to be contradictory. Plaintiff also admits that Stolfus ordered treatments in the meantime in

17  response to his complaints of continued pain and difficulty walking. This does not show

18  deliberate indifference. Plaintiff will be given leave to amend, if he can do so in good faith.

19          **4.**      **Dr. Singh**

20          Plaintiff alleges that he first saw Dr. Singh in January 2015, who ordered antibiotic

21  treatment. Dr. Singh stated the Form 7243s were denied by Sacramento, but had he reviewed

22  Plaintiff's medical file, he would have seen they were stamped denied at VSP. He also suggested

23  Plaintiff transfer to Chino, which was more aggressive in rendering treatment. Later, on March

24  13, 2015, Plaintiff was seen by Dr. Singh, who prescribed oral antibiotics to treat Plaintiff's

25  oozing staph infection.

26          Plaintiff fails to state a cognizable claim for deliberate indifference to serious medical

27  needs against Dr. Singh. He suggests Dr. Singh erred in informing Plaintiff the true reason why

28  his Form 7243s had been denied, but does not show how this constitutes any deliberate

indifference by Dr. Singh to a known medical need. Plaintiff's allegations also suggest a difference of opinion regarding Defendant Singh's treatment plans. This is not sufficient to state a cognizable Eighth Amendment claim. Toguchi, 391 F.3d at 1057–58, 1060 (a difference of opinion between a healthcare professional and a prisoner does not rise to the level of deliberate indifference; negligence in diagnosing or treating a medical condition also does not amount to deliberate indifference). Plaintiff will be given leave to amend, to the extent he can do so in good faith.

### 5.      Physicians' Assistant Sisodia

Plaintiff alleges that Defendant Sisodia interviewed Plaintiff in connection with his grievance. She refused to order opiate medication, saying she did not want Plaintiff to become addicted with two years left to go on his sentence. Instead, she prescribed ibuprofen. Had she reviewed his file, she would have seen that he had been previously approved for opiates, so she either failed to do so or ignored it. She also conferred with Defendant Toor on an appeal.

Plaintiff fails to state a cognizable claim for deliberate indifference to serious medical needs against Physician Assistant Sisodia. Plaintiff's allegations suggest a difference of opinion regarding his medication, or possibly negligence in failing to review his medical file.  As noted above, neither of these are sufficient to state a cognizable Eighth Amendment claim. Plaintiff's allegation regarding Sisodia's conferral with Defendant Toor is conclusory and vague, and does not state any violation of his constitutional rights. Plaintiff will be given leave to amend, to the extent he can do so in good faith.

### B.      Constitutional Claim based upon Custom and Practice

Plaintiff alleges that Fisher, Lewis, Singh, Toor, and Stolfus were aware of severe overcrowding and a lack of medical staff, and were put on notice of these conditions due to the filing of lawsuits, including Plata v. Schwarzenegger, et al., C01–1351–TEH (N.D. Cal. Jan. 23, 2008).[1] Plaintiff further alleges that these Defendants were aware of policies and procedures

---

[1]      Since August 2008, the California Department of Corrections and Rehabilitation's prison health care system has operated under a Federal Receiver appointed in the Plata v. Schwarzenegger class action litigation. J. Clark Kelso is the Receiver for CDCR's health care system. See Plata v. Schwarzenegger, et al., C01–1351–TEH (N.D. Cal. Jan. 23, 2008). During the period of receivership, Plata has been the

regarding timely care, and that the conditions cause inmates to not receive necessary, timely care, creating a grave risk of injury and/or illness. All of these allegations are made in a conclusory fashion, without supporting facts.

As Plaintiff has been previously informed, to the extent that he is attempting to base a claim on alleged violations the Receiver's Plan for Provision of Constitutional Care, as arose out of Plata v. Schwarzenegger, such violations do not provide an independent basis for damages in this action. See Cagle v. Sutherland, 334 F.3d 980, 986–87 (9th Cir.2003) (consent decrees often go beyond constitutional minimum requirements, and do not create or expand rights); Green v. McKaskle, 788 F.2d 1116, 1123 (5th Cir.1986) (remedial decrees remedy constitutional violations but do not create or enlarge constitutional rights). "[R]emedial orders ... do not create 'rights, privileges or immunities secured by the Constitution and laws' of the United States." Hart v. Cambra, 1997 WL 564059, *5 (N.D.Cal. Aug.22, 1997) (quoting Green, 788 F.2d at 1123–24). Plaintiff may not state a section 1983 claim based on the failure to comply with any remedial plan or consent decree.

### C.    State Law Claims

As Plaintiff has failed to state any cognizable federal claims in this action, the Court finds it unnecessary to screen Plaintiff's state law negligence claims. The Court generally declines to exercise supplemental jurisdiction over state law claims in the absence of viable federal claims and this case presents no exception. 28 U.S.C. § 1367(c)(3); Parra v. PacifiCare of Ariz., Inc., 715 F.3d 1146, 1156 (9th Cir. 2013); Herman Family Revocable Trust v. Teddy Bear, 254 F.3d 802, 805 (9th Cir. 2001); see also Watison v. Carter, 668 F.3d 1108, 1117 (9th Cir. 2012) (if court declines to exercise supplemental jurisdiction over state law claims once court dismissed federal claims, then the court should dismiss the state law claims without prejudice).

Further, under California law, the Government Claims Act requires exhaustion of those claims with the California Victim Compensation and Government Claims Board, and Plaintiff is required to specifically allege compliance in his complaint. Shirk v. Vista Unified Sch. Dist., 42

---

judicial vehicle by which a number of improvements to medical care in the California prison system. Aluya v. Mgmt. & Training Corp., No. 1:13-CV-1209 AWI JLT, 2015 WL 4203946, at *5 (E.D. Cal. July 13, 2015).

Cal.4th 201, 208-09 (Cal. 2007); State v. Superior Court of Kings Cnty. (Bodde), 32 Cal. 4th 1234, 1239 (Cal. 2004); Mabe v. San Bernardino Cnty. Dep't of Pub. Soc. Servs., 237 F.3d 1101, 1111 (9th Cir. 2001); Mangold v. California Pub. Utils. Comm'n, 67 F.3d 1470, 1477 (9th Cir. 1995); Karim-Panahi v. Los Angeles Police Dep't, 839 F.2d 621, 627 (9th Cir. 1988).  Plaintiff has failed to allege compliance with the Government Claims Act.

## IV.   CONCLUSION AND ORDER

For the reasons stated, Plaintiff's complaint fails to state a claim upon which relief may be granted. Plaintiff is granted leave to file a second amended complaint within thirty (30) days. Noll v. Carlson, 809 F.2d 1446, 1448-49 (9th Cir. 1987).  Plaintiff may not change the nature of this suit by adding new, unrelated claims in his second amended complaint.  George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007) (no "buckshot" complaints).

Plaintiff's second amended complaint should be brief, Fed. R. Civ. P. 8(a), but must state what each defendant did that led to the deprivation of Plaintiff's constitutional or other federal rights. Iqbal, 556 U.S. 662, 678. "The inquiry into causation must be individualized and focus on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused a constitutional deprivation." Leer v. Murphy, 844 F.2d 628, 633 (9th Cir. 1988). Although accepted as true, the "[f]actual allegations must be [sufficient] to raise a right to relief above the speculative level. . . ." Twombly, 550 U.S. at 555 (citations omitted).

Finally, an amended complaint supersedes the original complaint, Forsyth v. Humana, Inc., 114 F.3d 1467, 1474 (9th Cir. 1997); King v. Atiyeh, 814 F.2d 565, 567 (9th Cir. 1987), and must be "complete in and of itself without reference to the prior or superseded pleading," Local Rule 220. "All causes of action alleged in an original complaint which are not alleged in an amended complaint are waived." King, 814 F.2d at 567 (citing to London v. Coopers Lybrand, 644 F.2d 811, 814 (9th Cir. 1981)); accord Forsyth, 114 F.3d at 1474.

Based on the foregoing, it is HEREBY ORDERED that:

1.      The Clerk's Office shall send to Plaintiff a civil rights complaint form;

2.      Plaintiff's amended complaint, filed July 14, 2016, is dismissed for failure to state a claim;

3.     Within **thirty (30) days** from the date of service of this order, Plaintiff shall file a Second amended complaint or a notice of voluntary dismissal; and

4.     **If Plaintiff fails to file a second amended complaint in compliance with this order, the Court will dismiss this action, with prejudice, for failure to state a claim and to obey a court order**.

IT IS SO ORDERED.

Dated:   **July 18, 2016**                    /s/ *Barbara A. McAuliffe*
                                                    UNITED STATES MAGISTRATE JUDGE